Good morning. May it please the court. My name is Richard Viksorek. I represent the appellant in this case, Israel Nava. Mr. Nava was convicted in this case after the government introduced insufficiently authenticated Google Earth-generated exhibits into evidence. Introduction of these exhibits was an attempt by the government to bolster its case from its previous attempt at convicting Mr. Nava, which had previously failed. What was missing in the foundational testimony to authenticate the Google exhibits? Your Honor, just about everything. There was almost no testimony given regarding the process or system used to create these exhibits. In the introduction of photographs, the foundational question to the witness on the stand is, is this an accurate representation of whatever the object is? He doesn't have to say, well, I know it was taken with a Leica, and I know it was developed under this system, and I know that the exposure was F8. He doesn't have to say that. All he has to say is it's an accurate representation. That's true, Your Honor, for photographs. The key distinction to remember in this case is these exhibits are not photographs. These are Google Earth-generated computer software generates these documents. These are data produced by a computer. Now, certainly they were talking about a location, weren't they? And didn't the officer indicated that he had personal knowledge about the specific location? That's correct, Your Honor. Again, with regards to photographs, perhaps that's sufficient. But for something produced by a computer such as this, this is data being produced by a computer and a software program that can be played with, and there was no testimony of the process that generates the image and that the satellites orbit the Earth. Suppose it had been a drawing. All he's got to say is that it's an authentic representation of whatever the object is. The way it's produced is irrelevant to the issue of whether it's an accurate representation of the scene. It's certainly not irrelevant, Your Honor. When it comes down to the issue of authentication, it goes to whether the data produced by the computer is accurate or it might produce inconsistent results. Now, when you go on Google Earth, it doesn't bring up a photograph. It's an interactive 3-D program that can be manipulated and used by the user, and different angles can be looked at of the same area. And when you move the angle on the Earth, the elevations rise, the different angles come up, and a line drawn on a map or a pin put on a map could shift where it is depending on what angle you're looking at. And that's the key distinction here, Your Honor, is that the way this is produced, you need to have either someone who, a Google Earth programmer or someone who works with the program on a regular basis and is familiar with it who could testify as to how these exhibits were generated, in that it's not simply a camera taking a photograph. It's several satellites going over from different angles taking pictures of an area so that they can build a 3-D graphic of an area. And certainly what angle the camera is pointed when it gets the satellite image, how they are blended together, certainly is relevant to whether the image that is produced is accurate or not, or is going to produce a consistent result every time you enter that same information into Google Earth. And a photograph can be altered by a good forger. And the same question can be put. The question finally is to the witness, does this representation, whether it's by drawing, by Google, or by photograph, accurately represent the scene as you were acquainted with it? And he said, yes. Why don't you go to the other issue in this case? Yes, Your Honor. Turning to the motion for a new trial for a biased juror, this case really presents quite an amazing coincidence. We have a juror who was called twice for federal jury service in San Diego, and both times, coincidentally, was in front of the same judge. But even more coincidentally, it's such an amazing coincidence that the defendant in both cases was the exact same defendant, and that was Mr. Nava in this case. Now, this coincidence was such an amazing coincidence that it apparently led everyone involved, to misunderstand what the true facts were in this case. When the motion for a new trial was brought, the judge just dismissively denied the motion, stating that because this juror happened to be called before him on, quote, some other case, that that wouldn't be indicative of any bias on his part. What question did the juror lie about? He received a question that was to the entire panel that said, does anyone know any of these folks? Now, nobody spoke up. Nobody affirmatively said yes. The juror, of course, had a duty to say yes, that I was seated, well, I was not seated. I was here on a jury panel for this same exact defendant. The juror who sees a defendant in the box during a trial knows him? He certainly knows who he is, Your Honor, after he has heard what his name is. The question was not have you ever seen the defendant before. The question was do you know this person? Do you know who this person is? I would interpret that, have you ever had any contact with this person? Well, Your Honor, he did have contact in the sense that he had been seated and was possibly going to be chosen as a juror for this individual who had been introduced by name, had been told what the charge was in that case. It was only the second time he had ever been called. It was in front of the same exact judge. Now, was that a case that went to trial? Yes, Your Honor. How long was the trial? Well, Your Honor, the length of the trial is not as important because the juror actually was not selected to sit on the trial. So he would have been there for jury selection? He was there for jury selection, yes, Your Honor. And that's the extent of his possible knowledge of this particular defendant? Well, the extent is, yes, Your Honor, that's where he gathered the knowledge. But, of course, what knowledge he gathered is what is important. And the fact that this was the same exact defendant and that he was charged with a 1325 offense, which was the exact same crime that he was now seated as a juror on this particular case. So what you're saying is that this juror was affected, was made biased against your client because he saw your client in the dock during jury selection? He certainly had knowledge that my client was being charged with. Was being charged, not that he had been convicted. Not that he had been convicted, but had been arrested and was being charged with something that would not be admissible or knowledge that would go to the jury for any other fact. If there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court, Helen Hong on behalf of the United States. The District Court did not abuse its discretion in denying the pro se motion for a new trial that the defendant filed on the date of his sentencing, and that's for two separate reasons. The first is the contours of the claim that the defendant presented in his motion, and that motion was included in our supplemental excerpts of record. But there is nothing in that motion that identifies the contours of the claim that's presented on appeal here, which is that the same juror appeared in the veneer for Mr. Nava in 2012 that appeared in his jury in 2014. And you can see that in the language that Mr. Nava used in the motion that he filed. So in SERs 178 and 179, Mr. Nava complained about a juror who had supposedly been a participant in the jury selection process for inmate Nava Arellano, and then he cites to transcript page 82 of corresponding page line number 20. That transcript page appears on ER 138, and that transcript is of the juror in this case, indicating to the district court, quote, I was selected. This is my second time, as a matter of fact, in front of you, judge. Last time I was excused. There's nothing in that transcript portion itself that identifies that the juror had actually been part of the veneer for Mr. Nava's case. So considering the context in which Mr. Nava's motion was raised, he was represented by counsel. He was not a pro se defendant at the time. He had able counsel representing him through the sentencing phase, none of whom, there were four of them, actually, that had cycled through his case. None of them had seen fit to file a motion for a new trial. When the district court then received Mr. Nava's filing, he did not, certainly could not identify a colorable basis to further investigate, or that would have triggered a duty to further investigate whether there was a true claim of jury bias. So for that reason alone, the district court did not abuse his discretion in denying the motion for a new trial. What about counsel's point that a general question was asked of the Vennire panel, does anyone know the defendant or the parties here, and he didn't raise his hand? Correct. And that goes to the second reason why the district court didn't abuse its discretion. That goes to McDonough style bias, and the question there is whether the juror failed to answer honestly a material question on Varnier. There's no evidence on the record in this case that the juror failed to answer honestly a material question on Varnier. The questions that were asked appear on ER 130 and 152, and the questions were, does anyone know any of these folks? And the juror in this question, along with the remainder of the pool, all didn't raise their hands, and so the attorney said no. And the second question that was asked is, now does anybody have any opinions about Mr. Nava at this time? Seeing no hands, no. Neither response on this record shows that the juror failed to answer honestly that question, because nothing in the record shows that the juror recalled that Mr. Nava was indeed the individual for whom he was a member of the Vennire back in 2012. And that point would be critical, because if that juror did not recall the circumstances of the jury, or jury duty for which he was called in 2012, if he didn't recall that it was Mr. Nava, if he didn't know that it was a Nava or believed it was a different Nava, then certainly he did not fail to answer honestly a material question on Varnier. And again, this record is empty of any evidence showing that the juror did have any basis to remember or recall what he had participated in back in 2012. So on that record, Mr. Nava has failed on this appeal to shoulder his burden to show that McDonough-style bias applies. For those reasons, the United States admits that the district court appropriately denied the motion to dismiss. Now, to the extent that there are any lingering questions about whether the record could fully flesh out that question, Mr. Nava has other vehicles to pursue to answer those questions. It's just that this appeal is not the vehicle in which to answer that kind of fact-bound question when the record hasn't been developed. Unless the Court has any other questions going particularly to the authentication issue or the 1326d issue, at this point the United States would submit. Seeing none, thank you very much. Thank you, Your Honor. The key thing to remember here about the pro se motion is that the Court had a duty to give it a liberal construction because it was filed by an inmate without assistance of counsel. And to address the fact whether he specified that this juror had been in his prior jury pool, he does say, and I quote, So if it weren't for Nava's prior trial, that would make no sense that he put in there for inmate Nava Arlano. So that was enough, coupled with the fact that the judge should give it a liberal construction and not hold the drafting against Mr. Nava to alert him of the issue. I took Ms. Hong to say, and she may be right, that where's the evidence that the juror remembered Nava? Well, the evidence in the record, Your Honor, is the fact that this juror showed that he had a good memory. The juror could remember that he was in a courtroom with the same judge and not remember that he saw a defendant that was the same defendant as in this case. Well, it's not probable, Your Honor, based on the fact that what's in the record that this juror had only been called twice, was in the same exact room, remembered the judge, said essentially the same exact thing on voir dire in both cases. It would be unlikely for him not to remember the specifics of the defendant and what the case was about. Thank you very much.
judges: Fernandez, Bea, Mendoza